UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DWAYNE BOYER, | |
| Plaintiff, | |
| v. | Case No. 23-cv-11429 |
| | Honorable Robert J. White |
| HI-LEX AMERICA, INC., et al., | |
| Defendants. | |

## STIPULATED ORDER FOR APPROVAL OF SETTLEMENT AGREEMENT

This matter is before the Court upon Plaintiff Dwayne Boyer's and Defendants Hi-Lex America, Inc.'s ("HIA"), Hi-Lex Controls, Inc.'s ("HCI"), and Daedong Hi-Lex of America, Inc.'s ("DDHLA") joint stipulation for approval of their settlement agreement, which is attached to this order. The Parties' stipulation states as follows:

1.      On June 15, 2023, Named Plaintiff filed a putative collective action against HIA on behalf of himself and others similarly situated. (ECF No. 1).

2.      Plaintiff alleges that Defendants failed to pay nonexempt employees all overtime wages based on the appropriate "regular rate of pay" calculation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

3.     Defendants deny the allegations and further assert that any overtime liability is offset by credit given for double time pay, holiday pay or paid time off or for any other reason permissible under the FLSA.

4.     Prior to Plaintiffs filing a motion for notice to similarly situated employees, the parties agreed to engage in early discovery, including written discovery and depositions, to focus on whether and which similarly situated employees existed.

5.     On February 28, 2024, Named Plaintiff amended the complaint to include HCI and DDHLA as named defendants, because HIA had argued that certain opt-ins never worked for HIA, but for other separately operated affiliates of HIA's Japan-based parent company.  ECF No. 30.

6.     On March 13, 2024, the Hi-Lex Entities moved to dismiss the first amended complaint based on numerous grounds, including standing issues. (ECF No. 32).

7.     On April 22, 2024, Plaintiffs filed a Motion for Entry of a Protective Order based on Defendants' implementation of new company policies during this litigation, including an arbitration agreement which included class and collective action waivers. (ECF No. 42).

8.     Nevertheless, recognizing the cost of protracted litigation of FLSA collective actions, the Parties agreed to a court-authorized notice and a voluntary mediation.  The Parties agreed to stay the proceedings, including the pending motions until their mediation concluded.

9.     On April 23, 2024, the Court approved the Parties' stipulation regarding proposed notice and authorized notice to be sent to for all current and former hourly production employees who worked for any of the Defendants in any of their United States facilities at any time since November 20, 2020. (ECF No. 43).  Notices of right to join the lawsuit were sent to all 4,545 identified members eligible to receive the notice.

10.     In addition to the Named Plaintiff, 555 individuals ultimately filed consent forms to participate in this FLSA collective action.

11.     Defendants provided Plaintiffs' counsel with pay records for Named Plaintiff and all opt-in Plaintiffs.

12.     Plaintiff and Defendants each retained their own expert statistician to calculate the potential overtime liability in this lawsuit.

13.     The Parties reached a settlement after engaging in arms-length negotiations, assisted by a private, neutral facilitator during a day-long, virtual mediation session.

14.     A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A.**

15.     "The circuits are split on whether the settlement of FLSA claims requires Court approval." *Reed v. M3K, LLC*, No. 22-175, 2023 WL 8440262, at *1 (E.D. Tenn. Dec. 5, 2023) (*comparing, e.g., Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 256 (5th Cir. 2012) (no Court approval required) *with Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (requiring Court

approval) *and Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (same); *see also Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) (no Court approval of attorneys' fees required).

16.     Historically, many district courts have found it appropriate to review and approve FLSA settlements. *Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 965 (E.D. Mich. 2021).  However, the Sixth Circuit has not yet decided the issue.  More recently, some district courts in our Circuit have held that court approval of FLSA settlements is not required. *See e.g., Askew v. Inter-Continental Hotels Corp.*, No. 19-24, 2022 WL 3161927 (W.D. Ky. Aug. 8, 2022) (holding no Court approval is required); *Barrios v. Kamps, Inc*., No. 23-548, 2024 WL 4181210 (W.D. Mich. Sept. 12, 2024) (same); *cf. Nader v. Springs Window Fashions, LLC*, 660 F. Supp. 3d 625, 627 (E.D. Mich. 2023) (requiring Court approval of FLSA settlement agreements); *Athan*, 523 F. Supp. 3d at 965 (same).

17.     In light of this split of authority, and the abundance of caution, Defendants requested that the subject Settlement Agreement be submitted to the Court for review of the approval issue (as it was disputed between the Parties at mediation) and, should the Court deem it necessary, approve the Settlement Agreement. Accordingly, the Parties have entered the instant stipulation to ensure enforceability of the Settlement Agreement under applicable law.

18.     In doing so, the Parties agree that: (i) the Settlement Agreement represents a reasonable compromise of Plaintiffs' claims, which the Parties recognize would otherwise require extensive litigation to determine; (ii) the Settlement

Agreement was negotiated on behalf of the Parties by counsel experienced in wage and hour claims, including under the FLSA; (iii) all Parties and their respective counsel agree that the Settlement Agreement, as submitted, is in the best interest of all Parties; and (iv) the Settlement Agreement fairly and reasonably comprises each Party's interests, benefits, and rights (*see Lynn's Food*, 679 F.2d at 1354; *Nader*, 660 F. Supp. 3d at 627).

19.    In addition, to facilitate an expedited resolution of this matter, the Parties waive any formal hearing on the approval.

*          *          *

WHEREAS the Court has reviewed the Parties' Stipulation and the attached Settlement Agreement, and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED that:

(1)    The Settlement Agreement is approved as submitted;

(2)    This case is dismissed with prejudice, without costs, interest, or attorneys' fees to any party, except as specifically provided in the Settlement Agreement and Release; and

(3)    This Order resolves all issues and closes the case.

SO ORDERED.


Dated: February 4, 2025              s/Robert J. White_____
                                     Robert J. White
                                     United States District Judge

**STIPULATED TO:**

*/s/Jesse L. Young* (w/consent) /
Jesse L. Young (P72614)
Sommers Schwartz, P.C.
141 E. Michigan Ave., Suite 600
Kalamazoo, MI 49007
(269) 250-7500
jyoung@sommerspc.com

Kevin J. Stoops (P64371)
Paulina R. Kennedy (P84790)
Sommers Schwartz, P.C.
1 Towne Sq., 17th Floor
Southfield, Michigan 48375
(248) 355-0300
kstoops@sommerspc.com
pkennedy@sommerspc.com

Jonathan Melmed (CA SBN 290218)
Laura Supanich (P85849) (CA SBN
314805)
Melmed Law Group, P.C.
1801 Century Park East, Suite 850
Los Angeles, CA 90067
(310) 824-3828
jm@melmedlaw.com
lms@melmedlaw.com

*Attorneys for Plaintiffs and the*
*Proposed Collective and Class*

Dated: January 29, 2025

*/s/Matthew S. Disbrow*        /
Matthew S. Disbrow (P65378)
Haba K. Yono (P81114)
Honigman LLP
2900 First National Building
600 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000
mdisbrow@honigman.com
hyono@honigman.com

*Attorneys for Defendant*

**EXHIBIT A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| DWAYNE BOYER,<br><br>     Plaintiff,<br><br>v.<br><br>HI-LEX AMERICA, INC., et al.,<br><br>     Defendants. | Case No. 23-cv-11429<br><br>Honorable Robert J. White |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made, on the one hand, by Dwayne Boyer ("Plaintiff" or "Named Plaintiff"), on behalf of himself and a putative collective of individuals (the "Opt-In Plaintiffs," as hereinafter defined) and, on the other hand, Defendants Hi-Lex America, Inc. ("HIA"), Hi-Lex Controls, Inc. ("HCI"), and Daedong Hi-Lex of America, Inc. ("DDHLA") (collectively, "Defendants"), and together with Named Plaintiff and Opt-In Plaintiffs, the "Parties".

## I.  RECITALS AND BACKGROUNDS

1.1     On June 15, 2023, Named Plaintiff filed a putative collective action complaint against HIA on behalf of himself and others similarly situated, which is now pending in the United States District Court for the Eastern District of Michigan before the Honorable Robert J. White, Case No. 2:23-cv-11429 (the "Litigation"). In the Litigation, Named Plaintiff alleges certain violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, (the "FLSA"), including, without limitation, —an entitlement to unpaid overtime wages. Named Plaintiff later amended the complaint on February 28, 2024 to include HCI and DDHLA as named defendants.

1.2     Defendants deny all material allegations of the Litigation. Defendants, without admitting any wrongdoing or liability, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to, the Litigation.

1.3     Plaintiffs' Counsel (as hereinafter defined) has analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on the Named Plaintiff and the Opt-In Plaintiffs. Plaintiffs' Counsel and Named Plaintiff are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate, and that this Agreement represents

a reasonable compromise of disputed claims, which is in the best interest of Named Plaintiff and the Opt-In Plaintiffs.

      **1.4**     Based upon their analysis and evaluation of a number of factors, the Parties recognize the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a larger recovery.

      **1.5**     Named Plaintiff and Defendants, by and through their respective counsel, have engaged in settlement discussions in connection with the potential resolution of the Litigation, including private mediation on December 13, 2024 with Michael Russell. The Parties – subject to the approval of the Court – have elected to settle the Litigation pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

      **1.6**     The Parties agree that if this Agreement is terminated pursuant to Section 7.2, the Litigation will proceed as if this Agreement had not been executed.

      NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation, as follows:

**2.**     **<u>TERMS</u>**

      **(a)**     **DEFINITIONS**

      The defined terms set forth in this Agreement have the meanings ascribed to them below.

      **1.1**     **Agreement** means this Settlement Agreement and Release**.**

      **1.2**     **Approval Order** means the Order entered by the Court, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Award, and dismissing the Litigation with prejudice, among other things.

      **1.3**     **Costs and Fees** means Plaintiffs' Counsel's attorneys' fees and costs, including, without limitation, the costs and fees of any Settlement Administrator and any other costs and fees associated with the Litigation.

      **1.4**     **Court** means the United States District Court for the Eastern District of Michigan.

      **1.5**     **Days** means calendar days.

      **1.6**     **Defendants' Counsel** means Matthew S. Disbrow, Esq. and Haba K. Yono, Esq., Honigman LLP, 2290 First National Building, 660 Woodward Avenue, Detroit, Michigan, 48226.

      **1.7**     **Employer Taxes** means the taxes an employer is required to pay arising out of or based upon the payment of employment compensation, including FICA, FUTA, and SUTA obligations. For the avoidance of doubt, the Parties agree that Employer Taxes do not include income and other taxes generally paid by the employee through withholdings from compensation.

**1.8     Individual Net Amount** means the amount paid to the individual Participating Opt-In Plaintiffs after deduction for taxes required to be withheld from employee compensation or other income.

**1.9     Notice of Settlement** means the form of which is attached hereto as Exhibit A.

**1.10  Opt-In Plaintiff** means each and every individual who filed consent forms in the Litigation to participate in the FLSA collective action asserted by Named Plaintiff.

**1.11   Opt-In Plaintiffs' Data** means each Opt-In Plaintiff's full name, last known address, social security number, and estimated W-2 and 1099 payments to be received under the Settlement.

**1.12  Participating Opt-In Plaintiffs** means Named Plaintiff and each Opt-In Plaintiff, or the authorized legal representative of such Participating Opt-In Plaintiff, who cashed or deposited a Settlement Check.

**1.13   Plaintiffs' Counsel** means Jesse L. Young, Esq. and Kevin J. Stoops, Esq., Sommers Schwartz, P.C., One Towne Square, Suite 1700, Southfield, MI 48076, and Jonathan Melmed, Esq. and Laura Supanich, Esq., Melmed Law Group, P.C., 1801 Century Park East, Suite 850, Los Angeles, CA 90067.

**1.14  Released Claims** means any and all wage claims alleged, or which could have been alleged, in the Litigation, including those based on the FLSA, the Michigan Improved Workforce Opportunity Wage Act, the Michigan Minimum Wage law, the Michigan Wage and Fringe Benefits Act, Alabama law, any contract or quasi-contract theory, any constitution or regulation, and/or common law between June 12, 2020 and December 13, 2024. The Released Claims include, but are not limited to, statutory, constitutional, contractual or common law claims for unpaid wages arising from minimum wage, overtime pay, misclassification, compensation, and related penalties, damages, liquidated damages, attorneys' fees, interest, expenses, disbursements, litigation costs and fees, restitution, or equitable relief.

**1.15  Settlement Administrator** refers to Atticus Administration LLC.

**1.16  Settlement Administration Costs** means the fees and costs incurred or charged by the Settlement Administrator in connection with the execution of its duties under this Agreement. Settlement Administration Costs will paid out of the Settlement Amount.

**1.17  Settlement Amount** means the gross amount of Two Hundred Eighty Thousand Dollars and Zero Cents **($280,000.00)**, inclusive of all payments set forth in Section 2, attorney's fees, costs, service awards, administration expenses, and any other amount related to the Litigation.

**1.18  Settlement Check** refers to a check sent by the Settlement Administrator to each Opt-In Plaintiff.

**1.19  Settlement Fund** means the funds that will be placed in escrow for the distribution to Named Plaintiff, Participating Opt-In Plaintiffs, Plaintiffs' Counsel and the Settlement Administrator, all in accordance with this Settlement Agreement. The Settlement Fund shall

consist of a maximum of $280,000.00, which shall be allocated in accordance with Section 2.2, below).

2.    **SETTLEMENT AMOUNT AND PAYMENT**

2.1    **Settlement Amount.** In consideration of the promises and covenants contained in this Agreement, Defendants agree to pay the Settlement Amount, plus any applicable Employer Taxes on the Back Wage Apportionment (as defined below), to fully resolve and satisfy any and all amounts to be paid to all Participating Opt-In Plaintiffs.

2.2    **Payment Structure.** In accordance with the Apportionment Schedule, the Settlement Administrator will make payments from the Settlement Fund as follows:

(a)    One set of Settlement Checks will be paid to Participating Opt-In Plaintiffs and will represent back wages, subject to all applicable tax withholdings (the "Back Wage Apportionment"). The gross (before tax) sum of all Back Wage Apportionment checks will equal Fifty Five Thousand Nine Hundred Three Dollars ($55,903.00), and will be reported on W-2 IRS Tax Forms;

(b)    A second set of Settlement Checks will be paid to Participating Opt-In Plaintiffs and will represent liquidated damages (the "Liquidated Damages Apportionment"). The Liquidated Damages Apportionment to Participating Opt-In Plaintiffs will be reported on 1099 IRS Tax Forms. The gross sum of all Liquidated Damages Apportionment checks will equal Fifty Five Thousand Nine Hundred Three Dollars ($55,903.00);

(c)    A check in the amount of Five Thousand Dollars ($5,000.00) to Named Plaintiff, as a service award for representing Opt-In Plaintiffs during the Litigation (the "Service Award"), which will be reported on a 1099 IRS Tax Form; and

(d)    A wire transfer in the amount of One Hundred Sixty Three Thousand One Hundred Ninety Four Dollars ($163,194.00) to Plaintiffs' Counsel, which represents full settlement of all Costs and Fees, which will be reported on a 1099 IRS Tax Form to Plaintiffs' Counsel in connection with this payment.

2.3    **Timing of Payments.** The Parties agree to the following timeline of settlement events:

(a)    Within 30 days of the Approval Order entered by the Court, Defendants will deposit the Settlement Amount (*i.e.*, $280,000), plus the Employer Taxes calculated by the Settlement Administrator, into a designated account created by the Settlement Administrator to create the Settlement Fund; and

(b)    Within fourteen (14) days of Defendants depositing the Settlement Fund, the Settlement Administrator will make the payments described in Section 2.2 above.

2.4    **Remainder.** Settlement Checks will be valid for 180 days. The monies related

to any Settlement Checks not cashed within 180 days of the check's issue date will be sent to Defendants.

## 3. THE SETTLEMENT ADMINISTRATOR

**3.1    Duties.** The Settlement Administrator will perform the duties specified in this Agreement and any other duties incidental to such obligations. The Settlement Administrator's duties shall include, without limitation: preparing and distributing the Settlement Checks and Notice of Settlement, calculating and directing the disbursement of payments to Participating Opt-In Plaintiffs and Named Plaintiff; calculating and timely paying any and all payroll taxes from the wages portion of the Net Settlement Amount to the appropriate tax authorities, as required under this Agreement and applicable law; handling inquiries about the calculation of individual settlement payments; preparing and filing any tax returns and information returns and any other filings required by any governmental taxing authority or other governmental agency; providing biweekly status reports to the Parties' counsel; printing and providing Participating Opt-In Plaintiffs with W-2 and 1099 forms as required under this Agreement and applicable law; and for such other tasks as the Parties mutually agree or the Court orders the Settlement Administrator to perform. The Settlement Administrator shall establish a mailing address, telephone number, facsimile number, and email address to receive Participating Opt-In Plaintiffs' inquiries about the Notice of Settlement, and settlement payments.

**3.2    No Conflict of Interest.** The Parties confirm, and Plaintiffs' Counsel and Defendants' Counsel confirm that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

## 4.        NOTICE AND PAYMENT

**4.1    Provision of Opt-In Plaintiffs' Data.** Within 14 calendar days after the Court's Approval Date, Defendants' Counsel and Plaintiffs' Counsel will cooperate to provide the Settlement Administrator with the Opt-In Plaintiffs' Data in an electronic format. This information will remain confidential and will not be disclosed to anyone, except as required to applicable taxing authorities, pursuant to Defendants' express written authorization, by order of the Court, to Plaintiffs' Counsel (as to each person's calculation under Section 2.2 only), or as otherwise provided in this Agreement.

**4.2    Notice Packets.** Using the Opt-In Plaintiffs' Data, the Settlement Administrator will issue: (1) settlement checks to each Opt-In Plaintiff with a minimum payment of $15; and (2) the Notice of Settlement.

**4.3    Returned/Undeliverable Payments and Notice of Settlement.** For any notice packet that is returned as undeliverable, the Settlement Administrator will perform a skip trace search. The returned notice packet will be re-mailed to the new addresses obtained for such Opt-In Plaintiff, if any. To the fullest extent possible, such searching and re-mailing will be completed within fifteen (15) calendar days of the date that the notice packets were originally mailed.

5.   **TAXES**

    **5.1**   **Responsibility for Taxes**. The Settlement Administrator will only withhold taxes from the Back Wage Apportionment checks, as stated in Section 2.2(a), above. Except as otherwise set forth in this Agreement, Named Plaintiff and Participating Opt-In Plaintiffs will be responsible for any and all tax consequences related to receiving Settlement Checks.

    **5.2**   **No Tax Advice**.     Neither Defendants, Defendants' counsel, nor Plaintiffs' counsel makes any representations concerning the tax consequences related to receiving Settlement Checks, and Participating Opt-In Plaintiffs are hereby encouraged to consult with her/his/their own tax advisors. Participating Opt-In Plaintiffs will hold harmless Defendants for any assessments, fines, penalties, damages, costs, fees, or liabilities of any kind arising from any taxes consequences resulting from receiving Settlement Checks.

6.   **RELEASE OF**

    **6.1**   **Release by Plaintiffs.** For and in consideration of the above, Named Plaintiff and Participating Opt-In Plaintiffs each waive and release Defendants, and each of their respective current and former parents, subsidiaries, predecessors, successors, affiliates, divisions (whether incorporated or unincorporated) and/or assigns, and any and all of its/their current and former owners, directors, officers, shareholders, members, investors, insurers, managers, agents, representatives, and employees (collectively the "Released Parties"), both jointly and individually, from any and all Released Claims from June 12, 2020 through December 13, 2024.

    **6.2**   **General Release of All Claims by Named Plaintiff**.         In exchange for his receipt of the service award, Named Plaintiff forever waives, discharges and releases each of the Released Parties from any and all claims, known or unknown, asserted or unasserted, which he has or may have against any of the Released Parties as of the date of this Agreement, including, but not limited to, all claims released in the Section 6.1, above, and any alleged violation of: Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; the Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan); the Immigration Reform and Control Act; Age Discrimination in Employment Act; the Americans with Disabilities Act of 1990; the Fair Credit Reporting Act; the Family and Medical Leave Act; the Equal Pay Act; the FLSA; Michigan's Elliot-Larson Civil Rights Act; the Michigan Persons with Disabilities Civil Rights Act; the Michigan Whistleblowers' Protection Act; the Michigan Improved Workforce Opportunity Wage Act; the Michigan Minimum Wage law; the Michigan Wage and Fringe Benefits Act; any other federal, state or local law, rule, regulation, or ordinance; any public policy, contract, tort, or common law; and any basis for recovering costs, fees, interest or other amounts including, without limitation, attorneys' fees incurred in these matters. Notwithstanding the foregoing and notwithstanding any terms or provision to the contrary in this Settlement Agreement, the Named Plaintiff does not release any claims, rights, remedies, or relief of any kind that cannot be released, waived or infringed by private agreement and/or as a result of any law, statute or ordinance. For the avoidance of any doubt, the Named Plaintiff agrees and acknowledges that this release includes, without limitation, a waiver and release of all class, collective, or representative claims and Named Plaintiff agrees not to act as a representative of or otherwise participate in any class, collective, or representative claims against any of the Released Parties.

**6.3     No Current Claims**. Other than the Litigation, Named Plaintiff represents that he has not filed any complaints, claims, or actions against any of the Released Parties with any federal, state or local court or governmental agency, or any demands for arbitration relating to Released Claims. Named Plaintiff, on behalf of himself and the other Participating Opt-In Plaintiffs, further agrees not to bring, continue or maintain any claim or legal proceeding against any of the Released Parties before any court, governmental agency or other forum relating to Released Claims. If any court, governmental agency or other forum already has or assumes jurisdiction of any complaint, claim, action or demand for arbitration, against any of the Released Parties regarding any Released Claim, Named Plaintiff, on behalf of himself and the other Participating Opt-In Plaintiffs, will immediately request that court, governmental agency or other forum to dismiss the matter with prejudice. Named Plaintiff, on behalf of himself and the other Participating Opt-In Plaintiffs, further agrees that should any complaints, claims, actions or demands for arbitration be filed hereafter against any of the Released Parties regarding any Released Claim in any federal, state or local agency or by any other person or entity, that any such complaints, claims, actions or demands for arbitration, will be immediately withdrawn with prejudice, or dismissed with prejudice. Named Plaintiff, on behalf of himself and the other Participating Opt-In Plaintiffs, warrants and represents that Participating Opt-In Plaintiffs will not authorize any other person or entity, including any governmental agency, to seek individual remedies against any of the Released Parties concerning any Released Claim, and will not become a party to, and will not join, any class or collective action brought against any of the Released Parties relating to the Released Claims.

**6.4     Adequacy of Consideration**. Named Plaintiff, on behalf of himself and the other Participating Opt-In Plaintiffs, agrees that the consideration in this Agreement is adequate for the release of all Released Claims set forth in this Agreement. Named Plaintiff, on behalf of himself and the other Participating Opt-In Plaintiffs, acknowledges that he and the Participating Opt-In Plaintiffs have been paid all wages, salary, bonus, or other compensation to which she/he/they are entitled.

**6.5     Non-Admission of Liability**. This Agreement is not and shall not be construed as an admission of any wrongdoing. It is understood and agreed by the Parties that this settlement is a reasonable compromise of disputed claims, and that Defendants deny all liability. The Parties have entered into this Agreement for the sole purpose of resolving the Litigation.

**6.6     No Assignment of Claims**. Named Plaintiff and Participating Opt-In Plaintiffs each warrant and represent that she/he: (a) has the sole right, title, and interest to the claims released under this Agreement, (b) has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim released pursuant to this Agreement, and (c) has not assigned or transferred, nor purported to assign or transfer, to any person or entity, the right to the monies, in whole or in part, being paid pursuant to this Agreement.

**6.7     No Press Release**. Plaintiffs' Counsel agrees to not make public statements or posts on social media or their websites regarding the subject matter of this Agreement. Notwithstanding the foregoing, Plaintiffs' Counsel may identify the settlement as part of any curriculum vitae or fee petitions as needed, or in conjunction with court approval of attorney fees.

**6.8     Dismissal of Litigation**.     Upon Defendants' payment of the Settlement Amount, counsel for the Parties will file a stipulated order of dismissal with prejudice, and without

further costs or attorneys' fees to any party, which will close the

7. Litigation. **APPROVAL PROCEDURE**

    **7.1 Deadline to File Stipulated Order for Approval**. The Parties will submit to the Court a proposed stipulated order to approve this settlement within seven (7) days of the Agreement being fully executed.

    **7.2 Failure to Approve**. This Agreement is expressly conditioned upon its approval by the Court in settlement of the FLSA and other claims asserted in the Litigation. In the event that the Court does not approve settlement based on this Agreement for a non-material reason, the Parties agree to cooperate with each other to modify the Agreement to conform with the Court's request and to resubmit the Agreement, as amended, to the Court for Approval; however, in the event the Court does not approve settlement based on the Agreement for a reason that any Party determines to be material, the Parties will attempt to modify the Agreement, but any Party may terminate the Agreement if all Parties fail to agree upon an amendment that will obtain Court approval, in which case the Parties' will petition the Court for a status conference to set a new case schedule and resume litigation.

8.     **INTERPRETATION AND**

    **8.1 Cooperation Between the Parties; Further Acts.** The Parties will reasonably cooperate with each other and will use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

    **8.2 No Assignment.** Plaintiffs' Counsel and Named Plaintiff, on behalf of the Participating Opt-In Plaintiffs, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related Litigation.

    **8.3 Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties with regard to the subject matter contained herein will be deemed merged into this Agreement.

    **8.4 Binding Effect.** This Agreement is binding upon the Parties and, with respect to Named Plaintiff and all Participating Opt-In Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of Named Plaintiff and all Participating Opt-In Plaintiffs in the Litigation, this Agreement is binding.

    **8.5 Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length, including during mediation with Michael Russell. All terms and conditions of this Agreement in the exact form set forth in this

Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**8.6     Attorneys' Fees and Costs.** Except as specifically set forth in this Agreement, the Parties will bear their own attorneys' fees and costs.

**8.7     Breach.**     In the event an action is instituted to enforce this Agreement, the prevailing party will be entitled to its/his/their attorneys' fees and costs, including attorneys' fees and costs on appeal.

**8.8     Severability.** Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision or any other jurisdiction, but this Agreement will be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained in this Agreement.

**8.9     Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**8.10 Governing Law.** This Agreement will in all respects be interpreted, enforced and governed by and under the laws of the State of Michigan, without regard to choice of law principles.

**8.11 Waiver.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, will be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement will not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, will have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**8.12 When Agreement Becomes Effective; Counterparts.** This Agreement will become effective upon its full execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**8.13 Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**8.14 Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**8.15 Consultation and Authority.** Counsel for the Parties warrant and represent that they have consulted with their respective clients and have full authority to enter into this Agreement on their behalf.

THE PARTIES FREELY, KNOWINGLY AND VOLUNTARILY ENTER INTO THIS AGREEMENT WITHOUT ANY DURESS OR COERCION. THE PARTIES HAVE CONSULTED IN DETAIL WITH COUNSEL OF THEIR CHOICE AND HAVE BEEN GIVEN AN AMPLE AND LENGTHY OPPORTUNITY TO DO SO. THE PARTIES HAVE CAREFULLY AND COMPLETELY READ ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT.

**Named Plaintiff, on behalf of himself and all other Participating Opt-In Plaintiffs**

Signature: _Dwayne Boyer_

**Print Name: Dwayne Boyer**

**Dated:** 01/14/2025 ,

**Defendants Hi-Lex America Inc., Hi-Lex Controls Inc., and Daedong Hi-Lex of America, Inc.**

**HI-LEX AMERICA INC.**

**Signature:**

**Print Name:** Brad Semp

**Dated:** January 28, 2025 ,

**Signature:**

**Print Name**: Brad Semp

**Dated:** January 28, 2025 ,

**DAEDONG HI-LEX OF AMERICA, INC.** Signature:

**Print Name:** Brad Semp

**Dated:** January 28, 2025 ,

10

**EXHIBIT A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DWAYNE BOYER, | |
| Plaintiff, | |
| v. | Case No. 23-cv-11429 |
| HI-LEX AMERICA, INC., et al., | Honorable Robert J. White |
| Defendants. | |

## NOTICE OF SETTLEMENT

This Notice is to inform you of a collective action settlement in the above case. You are being sent this Notice because you submitted a Consent to Join this lawsuit. As a member of the collective action, you are entitled to a share of the settlement proceeds.

## 1. DESCRIPTION OF THE LAWSUIT

Plaintiff Dwayne Boyer, ("Plaintiff") filed the above-captioned action against Hi-Lex America, Inc., Hi-Lex Controls, Inc., and Daedong Hi-Lex of America, Inc. (collectively, "Defendants") on behalf of himself and other current and former hourly employees who worked for at least one of the Defendants. Plaintiff alleges that Defendants failed to pay nonexempt employees all overtime wages owed based on the appropriate "regular rate of pay" calculation under the Fair Labor Standards Act ("FLSA"). Defendants deny the allegations. The Court has made no determination on the merits of Plaintiff's claims or Defendants' defenses.

Rather than continue to litigate these matters, Plaintiff and Defendants agreed to a court-authorized notice and a voluntary meditation. On April 23, 2024, the United States District Court for the Eastern District of Michigan (the "Court") approved the stipulated Court authorized notice for all current and former hourly production employees who worked for Defendants in any of their United States facilities at any time since November 20, 2020. Notices of right to join the lawsuit were sent to all identified members eligible to receive this notice. Approximately 555 employees, including you, joined this lawsuit as an opt-in plaintiff (collectively with other opt-in plaintiffs, the "Opt-In Plaintiffs") and agreed to be bound by any settlement or judgment on any wage and hour claim you may under the FLSA or analogous state or local law. (Plaintiff, Opt-In Plaintiffs and Defendants herein after referred to as the "Parties").

12

## 2. <u>THE SETTLEMENT</u>

The Parties have reached a settlement in this case for $280,000 and the Court approved the settlement. As part of the settlement, Plaintiff's Counsel fees and costs, a service award to Plaintiff and certain administrative costs will be deducted from the aggregate settlement amount.

The settlement benefits for those participating in the settlement were calculated as follows:

(a)     Participating Opt-In Plaintiffs will receive the aggregate full amount of $55,903 (before tax), representing back wages; and

(b)     Participating Opt-In Plaintiffs will receive the aggregate full amount of $55,903, representing liquidated damages.

For tax purposes, the aggregate amount received by each Participating Opt-In Plaintiff under (a) and (b) above will be treated as 50% wages, reported on an IRS Form W-2, and 50% liquidated damages, reported on an IRS 1099 form.

**You should seek the advice of a tax professional if you have any questions about the tax implication of this settlement.**

## 3.     <u>RELEASE</u>

Enclosed with this notice are two checks, representing back wages and liquidated damages. If you endorse these paychecks, you agree to be bound by the following release:

For and in consideration of the enclosed checks, you waive and release Defendants, and each of their respective current and former parents, subsidiaries, predecessors, successors, affiliates, divisions (whether incorporated or unincorporated) and/or assigns, and any and all of its/their current and former owners, directors, officers, shareholders, members, investors, insurers, managers, agents, representatives, and employees (collectively the "<u>Released Parties</u>"), both jointly and individually, from any and all liability relating to all statutory, constitutional, contractual or common law claims for unpaid wages arising from minimum wage, misclassification, overtime pay, misclassification, compensation, and related penalties, damages, liquidated damages, attorneys' fees, interest, expenses, disbursements, litigation costs and fees, restitution, or equitable relief and any other Released Claims, including those based on the FLSA, the Michigan Improved Workforce Opportunity Wage Act, the Michigan Minimum Wage law, the Michigan Wage and Fringe Benefits Act, Alabama law, any contract or quasi-contract theory, and/or any regulation from June 12, 2020 through December 13, 2024.

For any questions about the settlement, please contact Atticus Administration LLC [CONTACT INFORMATION] or Plaintiff's Counsel at [CONTACT INFORMATION].

13